IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 06-13894 MER |
| RALPH J. RIVERA | ) | |
| COLLEEN L. COVER-RIVERA | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| SIMON RODRIGUEZ, | ) | Adversary No. 06-1774 MER |
| Chapter 7 Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN DILLMAN | ) | |
| | ) | Signed/Docketed |
| | ) | February 28, 2012 |
| Defendant. | ) | |

ORDER

THIS MATTER comes before the Court on the remaining factual and legal issues in this adversary proceeding heard by the Court at the trial held on October 25, 2011. The Court has considered the parties Joint Pretrial Statement, witness testimony, exhibits, and relevant case law and is now prepared to rule.

JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(E) and (F) as it concerns a request for turnover of property of the estate and involves a proceeding to determine, avoid, or recover preferences.

## FACTUAL AND PROCEDURAL BACKGROUND

The lengthy history of this case is set forth in this Court's *Order Granting Motion to Set Aside Default Monetary Judgment* entered on December 23, 2010 (the "December 2010 Order").[1] The Court hereby incorporates the "Factual and Procedural Background" section of the December 2010 Order as if fully set forth herein. In the December 2010 Order, the Court set aside the Order and Judgment entered against Defendant, Steven Dillman, dba Steve's Cars ("Dillman") and noted a status and scheduling conference would be set to determine how to proceed on the remaining issues of value and relief under 11 U.S.C. §§ 547, 550 and 551.[2] After denying Dillman's motion for summary judgment on July 12, 2011, the matter was set for trial.

The parties stipulated to the following facts in the Joint Pretrial Statement:[3]

- On February 23, 2006, Dillman sold the following two vehicles to Colleen Cover-Rivera (the "Debtor"):

    a.  1999 Chevrolet motor vehicle with VIN 1GNEL19W0XB186736 (the "Chevrolet"); and

    b.  1993 Jeep motor vehicle with VIN 1J4GZ58Y4PC516909 (the "Jeep").

- Dillman sold the Chevrolet to the Debtor for the sale price of $8,995.00 which on the sale date, February 23, 2006, was a fair and reasonable price, negotiated and agreed to by Dillman and the Debtor.

- With respect to the Chevrolet, the basis for the price and methodology used to arrive at such price was by reference to a) the N.A.D.A. Used Car Pricing Guidebook applicable in February, 2006; b) the Kelley Blue Book Used Car Pricing Guidebook applicable in February, 2006; and c) Dillman's experience in the used car industry.

---

[1] December 2010 Order (Docket #37).

[2] Unless otherwise noted in the text, statutory references are to Title 11 of the United States Code.

[3] Joint Pretrial Statement (Docket #71).

- The Debtor financed her purchase of the Chevrolet with a loan from Dillman in the amount of $9,837.21 (the "Chevrolet Loan").

- To secure her repayment obligations under the Chevrolet Loan, the Debtor granted Dillman a security interest in the Chevrolet on or about February 23, 2006.

- The Chevrolet Loan agreement required Debtor to make an initial payment of $700.00, eighty-five (85) bi-weekly installment payments of $150.00 and a final payment of $50.26.

- The Debtor paid $1,300.00 to Dillman on account of the Chevrolet Loan. All payments were made prior to the Petition Date.

- On the Petition Date, the balance owed on the Chevrolet was $8,858.07.

- On the Petition Date, the Debtors scheduled the value of the Chevrolet at $8,500.00.

- Dillman sold the Jeep to the Debtor for the sale price of $7,195.00 which on the sale date, February 23, 2006, was a fair and reasonable price negotiated and agreed to by Dillman and the Debtor.

- With respect to the Jeep, the basis for the price and methodology used to arrive at such price was by reference to a) the N.A.D.A. Used Car Pricing Guidebook applicable in February, 2006; b) the Kelley Blue Book Used Car Pricing Guidebook applicable in February, 2006; and c) Dillman's experience in the used car industry.

- The Debtor financed her purchase of the Jeep with a loan from Dillman in the amount of $7,916.66 (the "Jeep Loan").

- To secure her repayment obligations under the Jeep Loan, the Debtor granted Dillman a security interest in the Jeep on or about February 23, 2006.

- The Jeep Loan agreement required Debtor to make an initial payment of $700.00, sixty (60) bi-weekly installment payments of $150.00 and a final payment of $69.18.

- The Debtor paid $1,300.00 to Dillman on account of the Jeep Loan. All payments were made prior to the Petition Date.

- On the Petition Date, the balance owed on the Jeep was $6,779.64.

- On the Petition Date, the Debtors scheduled the value of the Jeep at $5,000.00.

- The Debtor and her husband, Ralph J. Rivera, filed for relief under Chapter 7 of the Bankruptcy Code on or about June 26, 2006 (the "Petition Date"), Case No. 06-13894 MER.

- Plaintiff is the duly appointed Chapter 7 trustee of the bankruptcy estate of the Debtor and Ralph J. Rivera.

- On September 8, 2006, the Trustee commenced the within adversary proceeding against Dillman.

- As applicable herein, on November 15, 2006, the Court entered a default judgment in favor of the Trustee and against Dillman avoiding Defendant's liens against the Chevrolet and the Jeep pursuant to 11 U.S.C. § 547(b) because the liens were not timely perfected.

- The Chevrolet and the Jeep were sold by Dickensheet & Associates on July 28, 2007, at a public auction held in Denver, Colorado.

- The Chevrolet sold at auction for the sale price of $2,300.00.

- The Jeep sold at auction for the sale price of $1,450.00.

- Dillman has paid to the Trustee all preferential pre-petition payments received by Dillman from Debtor.

Based on these stipulated facts, the various values and figures can be summarized as follows:

| Vehicle | Dillman to Debtor Sale Price | Amount Financed | Total Pre-Petition Payments | Balance Owed on Petition Date | Value on Schedule B on Petition Date | Dickensheet Auction Sale Price |
|---|---|---|---|---|---|---|
| Chevrolet | $8,995.00 (02/23/06) | $9,837.21 (02/23/06) | $1,300.00 | $8,858.07 (06/26/06) | $8,500.00 (06/26/06) | $2,300.00 (07/28/07) |
| Jeep | $7,195.00 (02/23/06) | $7,916.66 (02/23/06) | $1,300.00 | $6,779.64 (06/26/06) | $5,000.00 (06/26/06) | $1,450.00 (07/28/07) |
| totals = | | | | | $13,500.00 (06/26/06) | $3,750.00 gross $3,046.12 net (07/28/07) |

## POSITIONS OF THE PARTIES

1.     Trustee / Plaintiff's Position.

Pursuant to § 550, the Trustee seeks entry of a monetary judgment in his favor and against Dillman in the amount of the difference between the value of the Vehicles on the Petition Date and the net amount received by the Trustee from the auction sale of the Vehicles (*i.e.* $13,500 - $3,046.12 = $10,453.88).

The Trustee relies on *Morris v. St. John National Bank* (*In re Haberman*), 347 B.R. 411 (10th Cir. BAP 2006) *aff'd* in *In re Haberman*, 516 F.3d 1207 (10th Cir. 2008) in asserting the position that his measure of recovery is the value of the avoided lien on the Petition Date.  According to the Trustee, that value is measured by the lesser of (a) the amount of the indebtedness owed Dillman on the Petition date [Chevrolet, $8,858.07 / Jeep, $6,779.64] or (b) the value of the Vehicles on the Petition date [Per Schedule B: Chevrolet, $8,500.00 / Jeep, $5,000.00].  *See Morris v. St. John National Bank* (*In re Haberman*), 347 B.R. 411 (10th Cir. BAP 2006) *aff'd* in *In re Haberman*, 516 F.3d 1207 (10th Cir. 2008).  Because the Trustee sold the Vehicles at auction, he believes the net sales price received for each Vehicle must be deducted from the lesser of the above values to reach the damage amount.

2.   **Dillman / Defendant's Position.**

Dillman asserts the Trustee is not entitled to monetary relief against him pursuant to § 550 because the liens against the Debtor's vehicles were already avoided under § 547(b) and automatically preserved under § 551. Further, the Trustee has already recovered pre-petition preferential payments, the vehicles and their value (the amount received at auction). Thus, Dillman asserts there are no circumstances present in this case supporting the Trustee's request for additional relief in the form of a monetary judgment against Dillman.

## DISCUSSION

In the December 2010 Order, the Court discussed the Bankruptcy Court, Bankruptcy Appellate Panel and Tenth Circuit Court of Appeals decisions in the cases of *Bremer* and *Trout*.[4] The Tenth Circuit Court of Appeals explained the interplay between §§ 547, 550 and 551 as follows:

> Several bankruptcy code provisions work together to protect the bankruptcy estate from preferential transfers made within ninety days of filing the bankruptcy petition. First, under § 547, the trustee may avoid "any transfer of an interest of the debtor in property." Once avoided, that transfer is automatically preserved for the estate under § 551, which provides: "Any transfer avoided under section . . . 547 . . . is preserved for the benefit of the estate but only with respect to property of the estate." In the case of an avoided security interest or lien, as here, § 551 ensures that a trustee avoiding a senior lien moves into that priority position and the estate is not trumped by the interest of a junior lien. *See Morris v. St. John Nat'l Bank* (*In re Haberman*), 516 F.3d 1207, 1210 (10th Cir. 2008).

> In addition to these remedies, § 550(a) also provides:
>
>> [T]o the extent a transfer is avoided under section . . . 547. . .the trustee may recover, for the benefit of the estate, the

---

[4] *In re Bremer*, 392 B.R. 873 (Bankr. D. Colo. 2008) and *In re Trout*, 392 B.R. 869 (Bankr. D. Colo. 2008), *In re Bremer*, 408 B.R. 355 (10th Cir. BAP 2009), and *In re Trout*, 609 F.3d 1106 (10th Cir. 2010).

property transferred, **or, if the court so orders**, the value of such property.[5]

This case involves issues of choice and risk. The Trustee, having made several choices, is now trying to mitigate the negative results of those choices and shift all risk away from him and on to Dillman. These choices started at the outset of this case. The Trustee learned the Vehicles may be worth pursuing as early as the § 341 meeting of creditors on August 15, 2006. Shortly thereafter he filed an application to employ David Wadsworth as his attorney and filed the instant adversary proceeding on September 8, 2006. Although an answer was due by October 10, 2006, the Trustee stated he waited a few weeks to file his motion for default judgment because he had many other lien avoidance cases pending and he wanted to make sure Dillman was not going to file a late answer or seek to engage in settlement discussions. Thus, the Trustee filed his motion for default on November 1, 2006 and obtained the now-vacated default judgment on November 15, 2006.

The Trustee then waited until March 2, 2007, to file his motion for turnover of the Vehicles, at which point the Trustee learned the Vehicles were not operable.[6] Though the Trustee's motion for turnover indicates the Trustee intended to use Roller & Associates, Inc. ("Roller") as his auctioneer, the Trustee ultimately filed an application on June 1, 2007, for authority to sell the Vehicles and to employ and compensate Dickensheet & Associates, P.C. ("Dickensheet") as the auctioneer. Dickensheet filed a Report of Sale on August 30, 2007. The Trustee explained he did not immediately file a motion to sell the Vehicle because of the time of year - asserting that auctioneers prefer sales in the spring and summer. Further, the Trustee testified that after a default judgment is entered, the creditor/defendant will often call and attempt to make a deal or the debtor will seek to buy the vehicles back from the estate (although neither of those things happened in this case). In addition, although the Trustee initially sought to use Roller as his auctioneer, he later learned Dickesheet's fees were less. Finally, the Trustee attributed some of the delay to the fact that Dickensheet only holds bankruptcy

---

[5] *In re Trout*, 609 F.3d at 1109 (emphasis added).

[6] Specifically, the Debtors response to the Trustee's motion for turnover, stated in part: "the Debtors have no objection to the entry of an Order requiring them to surrender the Chevrolet and Jeep to the Trustee, but object to the Trustee's request that these vehicles be turned over to Roller & Associates, Inc., 7500 York Street, Denver, Colorado 80229, and in support thereof state to the Court that the Chevrolet is inoperable as the motor is not functioning, and the Jeep is an unsafe vehicle to drive on the highway." Response (06-13894-MER, Docket #29, filed March 16, 2007).

auctions every 60 to 75 days, so he was waiting for the next auction date. The Court does not doubt the facts as testified by the Trustee. However, the Court believes these hurdles could have been overcome in less than a year.

As for the legal remedies at play in this case, the Trustee in this case initially sought and obtained an order and default judgment: (a) avoiding Dillman's security interests in the Vehicles pursuant to § 547(b); (b) preserving Dillman's security interests in the Vehicles for the benefit of the Estate under § 551; (c)(i) avoiding the payments in the aggregate amount of $1,200 made by the Debtors to Dillman in the 90 days prior to the bankruptcy filing pursuant to § 547(b), and (ii) ordering Dillman to turnover the amount of $1,200 to the Trustee; (d) authorizing the amendment of the Vehicles' certificates of title to replace Dillman with the Trustee, and (e) holding this proceeding in abeyance pending the Trustee's sale of the Vehicles.[7] The Order states, "After sales of the [Vehicles] and upon application by the Trustee to the Court upon proof of the Estate's net recovery from said sales, pursuant to 11 U.S.C. § 550(a), the Court shall enter a monetary judgment in favor of the Trustee and against Dillman in the amount of (a) the difference between $8,500.00 and the Estate's net recovery from the sale of the Chevrolet plus (b) the difference between $5,000.00 and the Estate's net recovery from the sale of the Jeep."[8]

The Trustee testified he has sought similar default judgment orders in other cases using the same form of proposed order and judgment submitted in this case, with the exception of paragraph (e). According to the Trustee, this case was the first time he had used the language of paragraph (e) in a proposed order. However, unlike other lien avoidance claims against institutional lenders or large automobile dealerships, the Trustee was concerned about collecting from a small dealer like Dillman.

Dillman has never contested the Trustee's right to the prepetition payments or to the Trustee's right to recover the Vehicles and sell them. However, Dillman argues the Trustee is not entitled to the monetary judgment the Trustee now seeks. This Court agrees with Dillman.

---

[7] Order dated November 15, 2006 (06-01774-MER, Docket #8) (set aside on December 23, 2010).

[8] Order dated November 15, 2006 (06-01774-MER, Docket #8).

As noted above, § 550(a) states:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 547 . . . the trustee **may** recover, for the benefit of the estate, the property transferred, **or, if the court so orders**, the value of such property.[9]

In this case, the Trustee seeks the property transferred (the security interest) **and** the value of such property on the petition date.  At trial, the Trustee testified he believes the Court has the authority to award the Trustee the difference between what the Vehicles sold for at auction and the value on the petition date.  Put another way, the Trustee argued, under the decision in *Trout*, he could simply have asked for a default judgment in the amount of the Schedule B values, *i.e.* for a default money judgment in the amount of $8,500 and $5,000, or a total of $13,500, and not sold the Vehicles.  However, as noted above, the Trustee chose this "hybrid" approach because he was concerned about collecting such a judgment from Dillman.  To minimize this risk, the Trustee sought turnover of the Vehicles and sold them at auction to ensure some recovery and is now seeking the difference to get back to the $13,500 judgment amount.  The Trustee argues he ends up with the same result either way (*i.e.* obtaining an initial monetary judgment of $13,500 or selling the Vehicles and seeking a lower monetary judgment later).  The Trustee argued the recipient of a preferential transfer assumes the risk the sale price would be less than the value on the petition date.

The Court believes the Trustee's analysis is contrary to § 550(a), as well as the Tenth Circuit's statements regarding depreciation.  In *Trout*, the Tenth Circuit stated:

> As the cases discussed above recognize, there may be situations in which the avoidance of the lien will not suffice to restore the estate to a pre-transfer situation, especially when the collateral securing the lien is gone or the lien itself has been paid in full.  *See, e.g., In re Blackburn*, 90 B.R. at 573; *In re Haberman*, 516 F.3d at 1208-09.  However, as the BAP here reasoned, the Code "does not guarantee that assets recovered will be worth what they were at any relevant valuation date;" it only ensures that the estate will be back in the same place as if the transfer had not occurred.  408 B.R. at 361.  Certainly, depending on the passage of time, the collateral may have

---

[9] 11 U.S.C. § 550(a).

devalued, but that would have happened even if the debtor had never transferred the security interest. *See In re Haberman*, 347 B.R. 411, 417 (10th Cir. BAP 2006) ("[T]here is always a risk that any great delay in the recovery of collateral may result in diminution of its value. That, however, is a risk that any creditor would have, and the Trustee should not be elevated to a higher position."), *aff'd* 516 F.3d 1207 (10th Cir. 2008). Moreover, as the BAP here suggested, unlike a trustee who lacks access to the collateral because it has been physically transferred, if a trustee seeking to avoid a preferential security interest were concerned about serious depreciation, the trustee could likely protect itself by selling the collateral and holding the proceeds in escrow while waiting for the adversary proceeding to be resolved (and thereby minimizing the need to resort to § 550(a) for protection). 408 B.R. at 361; see also 11 U.S.C. § 363.[10]

In this case, the Trustee had the ability to recover the collateral securing the liens, and did so. As noted by the Tenth Circuit, if the Trustee was concerned about depreciation, or the condition of the Vehicles between the petition date and the auction date, he could have sought turnover of the Vehicles or the authority to sell the Vehicles at the outset of the adversary proceeding, holding the proceeds in escrow pending resolution. The Trustee testified he did not sell the Vehicles at the outset, or while the adversary proceeding was pending, for several reasons - he might ultimately lose the adversary; he did not want to foreclose the opportunity to engage in settlement discussions with the Dillman; and he might be able to negotiate a sale back to the Debtors, rather than doing an auction.

The Tenth Circuit Court of Appeals recognized, "the language of § 550(a) suggests that the default rule is the return of the property itself, whereas a monetary recovery is a more unusual remedy to be used only in the court's discretion."[11] In exercising the discretion provided in § 550(a), this Court finds a monetary judgment against Dillman is not warranted in this case.[12] Were the Court to find otherwise,

---

[10] *In re Trout*, 609 F.3d at 1112-1113.

[11] *In re Trout*, 609 F.3d at 1113.

[12] Under the facts of this case, this Court agrees with the Honorable A. Bruce Campbell that, "Where, as here, the Trustee avoids only a non-possessory transfer of a lien interest, the preservation of that lien interest for the benefit of the estate is sufficient to place the estate in exactly the same position it

Dillman would be left in a significantly worse position than if he had never obtained a lien in the first instance. If the Court were to rule in favor of the Trustee, Dillman would have lost the Vehicles, his security interest in those Vehicles, the payments made by the Debtors within the 90 days prior to the bankruptcy, and any entitlement to post-petition payments, and be liable on a monetary judgment for over $10,000. The Court finds such a result does not comport with the Tenth Circuit's guidance for circumstances in which the avoidance and recovery of the lien alone will not suffice to restore the estate to its pre-transfer situation.

In reaching this conclusion, the Court does not criticize the Trustee's choices in this case or his motivation to shift the risk. The Trustee had to, and did, weigh of all the options and risks involved. However, the Trustee must recognize that all players involved bear some risk, including the debtor, Dillmanm and the Trustee himself.

Consequently, this Court agrees with the result in *In re Trout*, that is:

> Even if a bankruptcy court could, in its discretion, award the value of the lien in the circumstances presented here, this does not establish that it is required to do so; the choice of a § 550 remedy remains in the court's discretion. *See In re Classic Drywall, Inc.*, 127 B.R. at 877 (no abuse of discretion where factors cut both ways and court decided award of value was appropriate). Here, the Trustee has presented no compelling reason to deviate from the default rule of returning the transferred property itself, and the bankruptcy court did not abuse its discretion by concluding that the avoidance of the lien was sufficient and declining to order a monetary recovery.
>
> Before the transfer of the security interest here, the estate had a depreciating asset and an obligation to an unsecured creditor. After the transfer, the estate still had the asset but a creditor had a secured priority interest in that asset. After avoidance of the lien, the estate once again had a depreciating asset and an unsecured obligation to the lender. Thus, as the BAP and the

---

would have been in, but for the granting of the lien. There is, under these circumstances, no need for the Trustee to "recover" any property or its value." *In re Bremer*, 392 B.R. at 874-875 and *In re Trout*, 392 B.R. at 871.

bankruptcy court concluded, on these facts, nothing more was required to put the estate back in its pre-transfer position.[13]

## CONCLUSION

For the reasons stated above,

IT IS ORDERED the Trustee is entitled to the relief already obtained in this adversary proceeding under §§ 547 and 551, and in the main bankruptcy case. However, the Trustee is not entitled to any further relief, including the monetary judgment sought under § 550.

IT IS FURTHER ORDERED the Trustee shall submit a proposed judgment consistent with this Order.

Dated: February 28, 2012                              By the Court:

*[signature]*

Michael E. Romero
United States Bankruptcy Judge

---

[13] *In re Trout*, 609 F.3d at 1113-1114.